UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREDERIC GREEN, #71746,<br><br>              Plaintiff,<br><br>    v.<br><br>SGT. PORTILLO, et al.,<br><br>              Defendant. | Case No. 2:13-cv-00024-APG-NJK<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>(Dkt. No. 14) |

    Frederic Green, an inmate at High Desert State Prison, alleges that two prison officials violated his constitutional rights. First, Green alleges that Officer Manuel Portillo violated his First Amendment rights by retaliating against him for filing a religious accommodations request. Second, Green alleges Warden Dwight Neven violated his Fourth Amendment rights by instituting a practice of conducting strip searches in a group setting. Defendants now seek dismissal of those claims, arguing both that Green has failed to allege sufficient facts and that his claims are barred by qualified immunity. (Dkt. #14.) I disagree and deny Defendants' motion.

**I.     BACKGROUND**

    Green is an inmate at the High Desert State Prison. While incarcerated, he was employed in the prison's culinary department. Pursuant to High Desert's policy, prison guards screen for contraband by conducting group strip searches on all prisoners employed in culinary. Green's claims stem from this strip-searching practice.

    On June 6, 2012, Green, a self-identified Muslim, allegedly asked a prison officer for an exception to the group-search practice.[1] He explained to the officer that, as a Muslim, being strip-searched in front of a group violated his religion's tenets of modesty.[2] Prison officers suggested

---

[1] (Dkt. #15, ¶12.)

[2] *Id.*

Green submit a written request to the culinary sergeant, Sargent Portillo.  Green allegedly did so on June 7, 2010.[3]  Portillo told Green that he would consult on the matter with the Prison's warden, Dwight Neven.[4]

Subsequently, Portillo informed Green his request was denied, and terminated Green from his culinary position.[5]  As a result of his termination, Green was subjected to more restrictive prison conditions such as reduced time out of his cell.  Also, he now receives no wages.[6]  Green alleges he was willing to continue working in his culinary position and was willing to comply with the group-search practice.  Green also alleges he would not have filed his grievance had he known the prison would respond by terminating him.[7]

On December 30, 2012, Green filed a complaint against Portillo and Neven claiming (1) First Amendment retaliation and (2) unreasonable search and seizure.[8]

## II. DISCUSSION

### A. LEGAL STANDARD

A complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[9]  While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."[10]  "Factual allegations must be enough to rise above the speculative level."[11]  Thus, to

---

[3] (Dkt. #15, ¶14.)
[4] (Dkt. #15, ¶11.)
[5] (Dkt. #15, ¶19.)
[6] (Dkt. #15, ¶22.)
[7] (Dkt. #15, ¶20.)
[8] (Dkt. #5.)
[9] Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).
[10] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[11] *Twombly*, 550 U.S. at 555.

survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[12]

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. First, the court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.[13] Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice.[14] Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief.[15] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the Defendant is liable for the alleged misconduct.[16] Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief."[17]

## A. ANALYSIS

### 1. Green's First Amendment retaliation claim against Portillo

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."[18] Retaliation against a prisoner for the exercise of First Amendment rights, including the right to file a grievance, is "itself a constitutional violation and prohibited as a matter of 'clearly established law.'"[19] An inmate must properly allege five elements to present a viable First Amendment retaliation claim. These include:

1. An assertion that a state actor took some adverse action against an inmate,

---

[12] *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).
[13] *Id.* at 1950.
[14] *Id.* at 1949.
[15] *Id.* at 1950.
[16] *Id.* at 1949.
[17] *Id.* (internal quotation marks omitted).
[18] *Turner v. Safley*, 482 U.S. 78, 84 (1987).
[19] *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

       2. because of,

       3. that prisoner's protected conduct;

       4. that such action chilled the inmate's exercise of his First Amendment rights, and

       5. the action did not reasonably advance a legitimate correctional goal.[20]

Portillo first argues Green's retaliation claim must fail because "a prisoner does not have a constitutional right to prison employment."[21] Although Portillo does not explain how this is relevant to Green's First Amendment retaliation claim, I will assume he intended to argue that a deprivation of prison employment cannot constitute an "adverse action." But the Ninth Circuit has explained an "adverse action" need not be a constitutional violation; retaliating against a prisoner because he exercised his First Amendment rights is a constitutional violation in itself.[22]

Portillo also argues Green has not adequately pleaded the other retaliation elements. I disagree. Green has sufficiently pleaded causation, the second element, by alleging he was fired from his culinary position shortly after filing a grievance. "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal."[23] The parties do not dispute that filing a grievance is protected conduct.[24] Green adequately pleaded his First Amendment rights were chilled, as he alleges he would not have filed a grievance if he had known he would be fired. And a significant change in prison conditions and the loss of prison employment could certainly chill speech. Defendants fail to address whether firing Green advanced a legitimate penological goal, and given that Green alleges he would have complied with the group-search practice, there is no indication at this time that his termination served a legitimate penological goal.

At this stage, Green has alleged sufficient facts in support of his First Amendment retaliation claim. I therefore deny Portillo's motion to dismiss this claim.

---

[20] *Brodheim*, 584 F.3d at 1269.

[21] (Dkt. #14, at 4-7.)

[22] *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995).

[23] *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

[24] (Dkt. #15, at 5.)

2. *Green's unreasonable search and seizure claim against Neven*

The Fourth Amendment guarantees "[t]he right of the people to be secure ... against unreasonable searches and seizures."[25] While this right extends to prisoners, prison regulations that impinge on a prisoner's constitutional rights are valid if "reasonably related to legitimate penological interests."[26] I must consider four factors when determining whether a regulation is related to a legitimate penological interest: 1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; 2) whether prisoners retain alternative means of exercising the right at issue; 2) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and 4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests.[27]

Neven argues the prison's group-search practice is permissible because it serves a legitimate penological interest of searching for contraband. I have insufficient grounds to make that determination at this stage. In *Michenfield v. Summer*, the Ninth Circuit expressed a particular concern for strip searches conducted in public.[28] The Court ultimately determined a strip search conducted in a prison hallway was reasonable, but only after considering evidence establishing there were no easy alternatives in which to conduct more private searches, and that private searches in that specific prison would impact the allocation of prison personnel.[29] While I agree High Desert has a legitimate penological goal in searching culinary employees for contraband, whether the prison has a legitimate interest in conducting these searches in groups is not revealed from the pleadings at this stage. Neven may succeed in establishing that the prison's

---

[25] U.S.C.A. Const. Amend. 4.
[26] *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)
[27] *Turner*, 482 U.S. at 89-9.
[28] *Michenfelder*, 860 F.2d at 333.
[29] *Id.*

policy of group searches serves legitimate goals of safety or cost, but at this stage Green has pleaded sufficient facts for this claim to survive dismissal.[30]

Neven also argues Green has failed to allege Neven "personally participated" in Green's strip search. In order to be held liable under Section 1983, a person must have personally participated in the deprivation.[31] But Green alleges Neven created the group search policy and directed Portillo to carry out group searches on Green. At this stage, I accept these allegations as true. If Neven created the policy and directed Portillo to carry out group searches, and the policy is found to violate the Fourth Amendment, Neven "personally participated" in the violation. Therefore, I find Green has sufficiently stated his Fourth Amendment claim against Neven.

### 3. Qualified immunity

Finally, both Portillo and Neven argue any alleged constitutional violation was objectively reasonable and thus shielded by their qualified immunity.[32] I consider two factors when determining qualified immunity: (1) whether the facts alleged show the official violated a constitutional right; and (2) whether the right was clearly established such that a reasonable government official would know the conduct was unlawful.[33] As explained above, Green has alleged facts showing Portillo and Neven may have violated Green's constitutional rights.

The dispositive inquiry in determining whether a right is clearly established is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."[34] Retaliating against a prisoner for filing a religious-accommodations grievance violates clearly established rights under the First Amendment.[35] Assuming the group search

---

[30] Defendants allege another correctional officer would be needed to privately search prisoners, creating unreasonable costs. But this is a fact not appearing on the face of the complaint, and improper for my consideration at the pleading stage. In addition, that fact, standing alone, may be insufficient to warrant summary judgment as it addresses only one of the four factors I must consider. *Michenfelder*, 860 F.2d at 332.

[31] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

[32] (Dkt. #14, at 10-12.)

[33] *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

[34] *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

[35] *Brodheim*, 584 F.3d at 1269.

policy is unconstitutional, whether a reasonable officer in Neven's position would have clearly known it was unlawful will depend on specific facts in this case, such as the ease of conducting more private searches of culinary workers. Therefore, I cannot find that qualified immunity warrants dismissal at this stage.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss is DENIED.

DATED THIS 28th day of September, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE