UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FREDERIC GREEN,<br><br>    Plaintiff,<br><br>v.<br><br>MANUEL PORTILLO and DWIGHT NEVEN,<br><br>    Defendants. | Case No. 2:13-cv-00024-APG-NJK<br><br>**ORDER (1) DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION**<br><br>(Dkt. #31, #37) |

Plaintiff Frederic Green is a prisoner at High Desert State Prison ("HDSP"). Defendant Manuel Portillo is a correctional sergeant at HDSP, and defendant Dwight Neven is the warden there. Green alleges that Portillo fired him from employment at HDSP's Culinary in retaliation for his request to be strip searched outside the view of other inmates, a request he made to accommodate his Muslim religious beliefs regarding modesty. Based on these allegations, Green asserts a claim for First Amendment retaliation in Count I. In Count II, Green alleges Neven approved an unconstitutional policy requiring inmates working at the Culinary to be strip searched in front of other inmates. The parties cross-move for summary judgment on these two claims.

**I. BACKGROUND**

Green began working in the HDSP Culinary on June 4, 2012. (Dkt. #5 at 3.) Operations Procedure 269.07.11 provides that "[a]ll inmate workers entering or departing the Culinary will submit to an unclothed body search." (Dkt. #37-1 at 10.) According to Green, these strip searches were conducted in the open in the presence of other inmates and staff. (Dkt. #5 at 3-4.) After having submitted to at least two of these searches, Green spoke to a culinary officer and asked if he could be strip searched more discretely to accommodate his religious principles of modesty.

1  (*Id.* at 4.) That officer suggested Green submit a written request to Portillo, the Culinary
2  Sergeant. (*Id.*)

3  Three days later, Green filed an inmate request form with Portillo requesting to be strip
4  searched privately to accommodate his Muslim religious beliefs regarding modesty. (Dkt. #37-1
5  at 60.) Green requested "assistance to resolve this matter without losing my employment." (*Id.*)
6  In the meantime, Green continued to submit to the searches. (Dkt. #5 at 4.)

7  A few days later, Green spoke to Portillo and requested to be searched either in private or
8  after all of the other prisoners were done. (Dkt. #37-1 at 67.)[1] Portillo brought the matter to the
9  attention of associate warden Howell, who stated Green's request could not be accommodated
10 because there were not enough officers available to conduct a private search. (*Id.*) Portillo told
11 Green that his request could not be accommodated and that he should look for employment that
12 would not impact his religious beliefs. (*Id.*) Portillo then released Green from continued
13 employment at the Culinary. (*Id.*) According to Portillo, Green never told him that Green would
14 submit to the strip searches to continue working at the Culinary. (*Id.*) Green contends that even
15 though he submitted to every search, he was fired from his job at the Culinary and that he would
16 not have requested the accommodation if he had known it would result in losing his job. (Dkt. #5
17 at 6; Dkt. #37-1 at 44.) According to Green, as a result of being fired, he lost wages and was
18 subjected to more restrictive prison conditions. (Dkt. #5 at 6-7.) Based on these allegations,
19 Green brought this suit.

20 **II. ANALYSIS**

21 Summary judgment is appropriate if the pleadings, discovery responses, and affidavits
22 demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to
23 judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the
24 outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
25 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict
26 for the nonmoving party." *Id.*

---

[1] The signed version of this affidavit is at Dkt. #42-1.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. First Amendment Retaliation (Count I)**

Prisoners have a First Amendment right to file prison grievances and civil lawsuits and to be free from retaliation for doing so. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). A First Amendment retaliation claim has five elements. First, the plaintiff must show he engaged in activity protected by the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012). Filing an inmate grievance is a protected activity. *Id.*

Second, the plaintiff must show the defendant took adverse action against him. *Id.* "The adverse action need not be an independent constitutional violation," and the "mere threat of harm" may suffice. *Id.* (emphasis and quotation omitted).

"Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.* A close proximity in time between the protected activity and the adverse action "can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Fourth, the plaintiff must show that the defendant's acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quotation omitted). The plaintiff does not have to show that the defendant actually suppressed his speech. *Rhodes*, 408 F.3d at 568. Evidence "that his First Amendment rights were chilled, though not necessarily silenced, is enough . . . ." *Id.* at 569. However, the plaintiff must show the harm he suffered was "more than minimal." *Watison*, 668 F.3d at 1116 (quotation omitted).

Finally, the plaintiff must show that the defendant's retaliatory act "did not advance legitimate goals of the correctional institution." *Id.* (quotation omitted). To establish this element, the plaintiff must show the defendant not only acted with a retaliatory motive, but also that the defendant's actions "were arbitrary and capricious," or "were unnecessary to the maintenance of order in the institution." *Id.* (quotation omitted).

Viewing the facts in the light most favorable to Green on the defendants' motion for summary judgment, Green engaged in protected activity because he filed an inmate request form requesting a religious accommodation. A reasonable jury could find Portillo took adverse action against Green by terminating his employment at the Culinary. A reasonable jury also could find a causal connection between Green's request and the termination of his employment. The timing between the request and Green's termination is circumstantial evidence of retaliatory intent. Additionally, Portillo specifically referenced Green's requested accommodation as the reason why he was being removed from the Culinary, even though Green had previously submitted to all searches. A reasonable jury could find that firing an inmate from a position at the Culinary would chill a person of ordinary firmness. Green avers that he lost wages and was subjected to harsher prison conditions until he could obtain other employment. Green also states that he would not have filed a request for an accommodation if he had known he would be fired from his employment at the Culinary.

Finally, a reasonable jury could find Portillo's actions were unnecessary to the maintenance of order in the institution. Green had submitted to every search required of him to serve in the Culinary. There is no evidence that when Green learned his request would not be fulfilled he would refuse to submit to future searches or that he no longer wanted to work there. Portillo nevertheless removed him from employment at the Culinary. Consequently, I deny Portillo's summary judgment motion on Count I.

Viewing the facts in the light most favorable to Portillo on Green's summary judgment motion, a reasonable jury could find Portillo did not act with retaliatory intent but instead sought only to accommodate Green's religious beliefs. A reasonable jury also could find that Portillo's

conduct was necessary for maintaining order and safety in the institution because there is no evidence Green advised Portillo that he would continue to submit to the searches rather than lose his employment. A reasonable jury thus could conclude that Portillo's actions were necessary to both maintain order in the Culinary while still respecting Green's religious beliefs. I therefore deny Green's summary judgment motion as to Count I.

### B. Fourth Amendment Unreasonable Search (Count II)

Defendant Neven issued Operations Procedure 269 for Culinary Management and Operation, the procedure which requires strip searches of inmates entering and leaving the Culinary. (Dkt. #37-1 at 2-39; Dkt. #40 at 56.) According to the associate warden at HDSP, Jennifer Nash, the purpose of this procedure is to ensure items are not being brought into or out of the kitchen for safety and security reasons. (Dkt. #37-1 at 41.) Items in the kitchen could be used as weapons if removed from the kitchen. (*Id.*) And given the close proximity of workers in the Culinary, it is important that no weapons are brought in. (*Id.*) An inmate's employment at the Culinary is voluntary. (Dkt. #40 at 50.) There are approximately 30 inmates per shift at the Culinary, with 3 shifts per day. (*Id.* at 48-49.) According to Nash, HDSP does "not have enough correctional officers to allow one on one searches." (Dkt. #37-1 at 41.)

The constitutionality of the search policy is governed by the principles set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Turner v. Safley*, 482 U.S. 78 (1987). Prisoners retain their rights under the Fourth Amendment to be free from unreasonable searches, but the reasonableness of a search "is determined by reference to the prison context." *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). Specifically, prisoners' rights are "subject to restrictions and limitations" based on "institutional needs and objectives." *Bell*, 441 U.S. at 545-46 (quotation omitted). Among the most important institutional needs and objectives are the "essential goals" of "maintaining institutional security and preserving internal order and discipline." *Id.* at 546. "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel." *Id.* at 547. Thus, "even when an institutional restriction infringes a specific constitutional guarantee, . . . the practice must be evaluated in the light of the central

objective of prison administration, safeguarding institutional security." *Id.* Given these concerns, I accord prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.*

With this context in mind, I evaluate the reasonableness of a particular search under the Fourth Amendment by "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* at 559. I consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

Here, the parties do not go into detail, but I presume the scope of a strip search is invasive by its very nature. That the searches apparently are conducted in a group of approximately 30 inmates adds to this invasiveness. However, the searches are necessary to discover and deter the smuggling of weapons in or out of the Culinary. While private searches may be preferable, I must defer to the HDSP officials who explain that the institution does not have enough officers available to conduct private searches of individual inmates, particularly where as here there are 30 inmates for each of 3 shifts per day at the Culinary. Employment at the Culinary is voluntary. A prisoner may avoid the searches by choosing not to work there. Green has not alleged or provided evidence that the searches were conducted in an unprofessional manner. Under these circumstances, no genuine issue of fact remains that the searches are not unreasonable under the Fourth Amendment and *Bell*.

Similarly, when I review a prison's restrictions of constitutional rights under *Turner*, I consider: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "the existence of obvious, easy alternatives" that "fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." 482 U.S. 78, 89-90 (1987) (quotation omitted).

As with the *Bell* analysis, when I consider these factors, I accord deference to "the informed discretion of corrections officials," particularly with respect to the third factor. *Id.* at 90.

There is no genuine issue of material fact that the challenged strip search policy is reasonably related to legitimate penological interests, and there is a valid, rational connection between those interests and the policy. Nash explains the security concerns supporting the searches for inmates entering and exiting the Culinary, and Green does not dispute that the searches are needed for safety and security reasons. There are alternative means of exercising the right in the sense that employment at the Culinary is voluntary. Thus, an inmate who does not want to submit to the searches may attempt to find employment elsewhere in the prison, as Green eventually did. (Dkt. #31 at 9.) As to the impact on institutional resources, Nash states that HDSP does not have enough guards to perform individual searches. Green does not provide any evidence to dispute that his request would require additional personnel to perform a more private search. The only alternatives Green identifies are for him to be searched separately or last. But he has presented no evidence that these accommodations would not require at least one additional officer.

In this situation, where the guards are dealing with approximately 30 inmates for each shift 3 times a day, and where those inmates have voluntarily agreed to work at the Culinary, Green has not presented sufficient evidence to maintain his claim that performing the searches in a group is unreasonable under the Fourth Amendment[2] in light of institutional goals and resources. I therefore grant Neven's motion for summary judgment and deny Green's motion for summary judgment on Count II.

### III. CONCLUSION

IT IS THEREFORE ORDERED that plaintiff Frederic Green's motion for summary judgment **(Dkt. #31) is DENIED**.

IT IS FURTHER ORDERED that defendants Manuel Portillo and Dwight Neven's motion for summary judgment **(Dkt. #37) is GRANTED in part and DENIED in part**. The

---

[2] Green has not asserted a religious accommodation claim under the First Amendment.

motion is granted as to Count II against defendant Dwight Neven. The motion is denied as to Count I against defendant Manuel Portillo.

DATED this 27th day of August, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE